26522. SOWEGA MELON GROWERS ASSOCIATION *v.* PERE MARQUETTE RAILWAY COMPANY.

DECIDED JANUARY 14, 1938.

228

*S. B. McCall,* for plaintiff in error.   *H. W. Nelson,* contra.

SUTTON, J.   ■ It was admitted that the correct amount of freight charges on the shipment was $186.79.   There was no evidence that the melons might have been disposed of sooner than July 10, 1929, and produced an amount in excess of $9.60.   The evidence of the railroad was that the Herndon Fruit Company did not refuse the shipment but did not unload or accept it, and that the railroad was finally forced to sell the melons to the best bidder. The railroad had been instructed to deliver the melons unconditionally to the fruit company.   The shipper contends that by the delay in selling the melons they thereby became greater damaged.

There was no evidence from the fruit company as to why they did not either expressly refuse or accept the shipment. Under the instructions from the shipper they were at liberty to demand delivery of the melons even as late as July 10, 1929, although it is conceivable they would not have desired the melons in their damaged condition. Whether or not the railroad should sooner have exercised the contractual right, given in the bill of lading, of selling the melons for its own protection, and in order to reduce the amount that the shipper would have to pay in the event the fruit company did not pay the freight charges, was a matter for determination by the jury. In the absence of an express refusal of the shipment by the fruit company, the railroad was under no obligation to seek further instructions from the shipper. But the defendant contends that the melons became damaged on account of an unreasonable delay in transportation, and that it should be paid $125, the amount at which the car-load of melons was sold to the fruit company, and denies that it is liable for the freight charges under the circumstances. Obviously the railroad would not be responsible for the damages to the melons, a perishable commodity, although receipted for "in apparent good order," if thereafter the damage was brought about through no fault of its own. On this point the evidence was conflicting, a witness for the plaintiff testifying that eight days, the time in which the shipment moved from Slocum to Lansing, was not unreasonable, and a witness for the defendant testifying that any time beyond five days would be excessive and unreasonable. The plaintiff's evidence was that the damage to the melons was caused by a disease termed anthracnose. The defendant's evidence was that the damage was caused by the melons being in the car an unreasonable length of time, and that rough handling would produce bruises and lead to decay. A witness for the plaintiff testified, as to this, that the contents of the car bore no evidence of having been shifted about. This conflict the jury resolved in favor of the plaintiff. It is contended that the evidence did not show that the plaintiff railway participated in the transportation of the car in question, and therefore that it was not entitled to any freight charges. No evidence in this respect was required, inasmuch as the defendant admitted in its answer that the plaintiff railway was the delivering carrier as alleged in the petition.

■ To its motion for new trial the defendant added a ground

that the jury was prejudiced by a statement of one of the jurors to his fellows in the jury-room, before the rendition of the verdict, that "he had a case similar to the one under discussion, and where he had shipped some form of perishable produce, and that he had to pay the freight even though his goods were lost or damaged in transit, and that the case under discussion seemed like his." In support of such statement several affidavits from jurors were presented to the trial court. Counsel for the movant also made oath that the fact was not known before the rendition of the verdict. One affidavit stated that up to the time of such statement by the juror the vote had been evenly divided on the question of recovery. No affidavit stated that the affiant had been influenced by the juror's statement in the jury-room. Whether or not this be true, it is well settled that a juror's affidavit can not be received to impeach his verdict. In *Estes* v. *Carter,* 105 *Ga.* 495 (30 S. E. 882), it was held: "Since a juror can never be heard to impeach his own verdict, there was no error in refusing to allow an amendment to a motion for a new trial, alleging that one of the jury acted upon his private knowledge of facts not proved, when such ground was not supported otherwise than by the affidavits of jurors who participated in trying the case." Cases in which affidavits from outside parties are submitted to show misconduct on the part of the jury are distinguishable. No merit is shown in this ground of the motion.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*